IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| SAMANTHA L. SANDOVAL and DARIOUS (RANDY) SANDOVAL,<br><br>Plaintiffs,<br><br>vs.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY aka STATE FARM FIRE AND CASUALTY COMPANY, and JOHN DOES I-X,<br><br>Defendants. | ORDER<br>AND<br>MEMORANDUM DECISION<br><br>Case No. 1:21-CV-171-TC |

After a small plane crash-landed on a road in Roy City, Utah, and hit Plaintiff Samantha Sandoval's car, she filed a claim with her automobile insurance company, Defendant State Farm Mutual Automobile Insurance Company. State Farm denied her claim for uninsured motor vehicle coverage, and she and her husband Darious (Randy) Sandoval brought this suit. State Farm now moves to dismiss the complaint, which asserts claims for breach of contract, breach of the implied covenant of good faith and fair dealing, declaratory judgment, and loss of consortium. For the reasons set forth below, the court grants State Farm's Motion to Dismiss (ECF No. 20).

## FACTUAL ALLEGATIONS

On September 12, 2017, Samantha Sandoval was driving her Chevrolet Malibu car on a

1

road in Roy, Utah, when Lawrence Erick took off in a small airplane from the Ogden-Hinckley Airport. Shortly after takeoff, Mr. Erick lost control of the airplane and made an emergency landing on the road. During the emergency landing, the airplane touched ground and collided with the car Mrs. Sandoval was driving. At the time Mr. Erick landed, the airplane was in landing mode, with its wheels down. The collision destroyed both the plane and the car, and Mrs. Sandoval was transported to the hospital for medical treatment. Mr. Sandoval, Ms. Sandoval's co-plaintiff, was not in the car at the time of the accident.

The pilot did not have liability insurance for the plane. Accordingly, the Sandovals filed an insurance claim with State Farm, asserting the plane was a "motor vehicle" covered by the uninsured motorist (UM) provision in the automobile insurance policy for Mrs. Sandoval's car (Policy[1]). State Farm denied the claim after concluding the plane was not a "motor vehicle" under the Policy.

The Policy covers both property damage and bodily injury caused by the driver of an uninsured motor vehicle (UM benefits). Specifically, State Farm agreed in the Policy that it

> *will pay compensatory damages for **bodily injury** an **insured** is legally entitled to recover from the owner or driver of an **uninsured motor vehicle**. The **bodily injury** must be: (1) sustained by an **insured**; and (2) caused by an accident that involves the operation, maintenance, or use of an <u>**uninsured motor vehicle**</u> as a motor vehicle.*

(Policy at 13–14 (underline emphasis added).)[2] The provision providing UM benefits for property damage is identical in all material respects. (See id. at 21.)

---

[1] See Policy No. 121 0966-B16-44A, attached as Ex. B to State Farm's Mot. to Dismiss, ECF No. 20-2. Plaintiffs' Complaint also refers to a State Farm policy insuring a different car in Plaintiffs' household—a Chevrolet Trailblazer. Although it appears that policy is not relevant (the Chevrolet Trailblazer was not involved in the accident), to the extent it is, the UM coverage provisions are identical. See Ex. C attached to State Farm's Mot. to Dismiss, ECF No. 20-3.

[2] In large part, a court may not consider information outside the four corners of a complaint to assess whether the claims survive a Rule 12(b)(6) motion to dismiss. Four exceptions exist:

The Policy defines "motor vehicle" as a "land motor vehicle." (Id. at 13–14, 21.) Plaintiffs insist that "land motor vehicle" includes an airplane. To support that position, they provide an elaborate interpretation, which the court addresses below.

## ANALYSIS

In the Complaint's first cause of action, Plaintiffs allege that State Farm's denial of their claim breached the Policy's express contractual terms as well as the implied covenant of good faith and fair dealing underlying the Policy. They also seek a declaratory judgment that State Farm has "a contractual duty to provide specific information and to pay specific dollar amounts of insurance coverage to Plaintiffs pursuant to the State Farm policy, and the Utah Code regulations regarding uninsured motor vehicles, as a result of the accident involving the uninsured motor vehicle." (Compl. ¶ 58, ECF No. 3-2.)

State Farm asks the court to dismiss all of the claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. State Farm primarily contends the Policy's clear and unambiguous language states the uninsured motorist coverage is limited to injury and damage caused by an uninsured "land motor vehicle," not an airplane. Accordingly, says State Farm, its denial of the Sandovals' claim did not breach the insurance contract. It also asserts that because there was no breach of the express contract, there can be no bad faith and no claim for breach of the covenant of good faith and fair dealing. For

---

(1) documents attached to the complaint as exhibits, (2) documents the complaint incorporates by reference, (3) documents and information subject to judicial notice, and (4) documents referred to in the complaint if they are central to the plaintiff's claim and the parties do not dispute the documents' authenticity. Gee v. Pacheco, 627 F.3d 1178, 1186 (10th Cir. 2010); Prager v. LaFaver, 180 F.3d 1185, 1188–89 (10th Cir. 1999). Although Plaintiffs did not attach a copy of the Policy to the Complaint, the court may consider it when analyzing State Farm's Motion to Dismiss because Plaintiffs expressly refer to it in the Complaint, it is central to their claims, and the parties do not dispute its authenticity.

the same reasons, State Farm opposes Plaintiffs' request for declaratory judgment. Finally, State Farm challenges Mr. Sandoval's loss of consortium claim.

**Rule 12(b)(6) Standard**

Federal Rule of Civil Procedure 12(b)(6) requires dismissal if the complaint fails to state a claim upon which relief can be granted. The court must accept all well-pled factual allegations as true and construe them in the light most favorable to the nonmoving party. Strauss v. Angie's List, Inc., 951 F.3d 1263, 1267 (10th Cir. 2020). But that rule does not apply to legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009). "Mere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim." Kansas Penn Gaming, LLC v. Collins, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "[T]o withstand a motion to dismiss, a complaint must have enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 at 570).

**Loss of Consortium**

Mr. Sandoval was not in the car at the time of the accident and did not suffer any bodily injury. Instead, he brings a claim for emotional distress by way of loss of consortium. (See Compl. ¶ 53 and Prayer for Relief.) State Farm challenges Mr. Sandoval's claim on the basis that neither the Policy nor Utah law allows recovery when the claimant did not sustain bodily injury. In their opposition, Plaintiffs concede they have no basis for that claim. (See Pls.' Opp'n to Mot. to Dismiss at 2, ECF No. 30.)

**Breach of Contract**

The interpretation of a contract, including an insurance policy, is a matter of state law.

Because this court's jurisdiction is based on diversity, it looks to the law of Utah, the forum state. Houston Gen. Ins. Co. v. Am. Fence Co., Inc., 115 F.3d 805, 806 (10th Cir. 1997).

Under Utah law, "an insurance policy is merely a contract between the insured and the insurer and is construed pursuant to the same rules applied to ordinary contracts." Saleh v. Farmers Ins. Exch., 133 P.3d 428, 432 (Utah 2006) (quotation marks and citation omitted). Any "ambiguous or uncertain language in an insurance contract that is fairly susceptible to different interpretations should be construed in favor of coverage[.]" Am. Nat'l Prop. & Cas. Co. v. Sorenson, 362 P.3d 909, 913 (Utah Ct. App. 2013). An insurance policy may be ambiguous if "it is unclear, it omits terms, or the terms used to express the intention of the parties may be understood to have two or more plausible meanings." Saleh, 133 P.3d at 432 (quotation marks and citation omitted). But "if a policy is not ambiguous, no presumption in favor of the insured arises and the policy language is construed according to its usual and ordinary meaning." Alf v. State Farm Fire & Cas. Co., 850 P.2d 1272, 1274 (Utah 1993). Whether the relevant language is ambiguous is a question of law. Saleh, 133 P.3d at 432.

A party contending that policy language is ambiguous must provide an interpretation that is "plausible and reasonable in light of the language used." Id. at 433 (quotation marks and citation omitted). "[T]o merit consideration as an interpretation that creates an ambiguity, the alternative rendition must be based upon the usual and natural meaning of the language used and may not be the result of a forced or strained construction." Id. "[W]ords and phrases do not qualify as ambiguous simply because one party seeks to endow them with a different interpretation according to his or her own interests." Id.

The Policy limits UM benefits to injury and property damage caused by an uninsured "land motor vehicle." (Policy at 13–14, 21.) Plaintiffs assert that "land motor vehicle" is

ambiguous and should be read to include an airplane. But Plaintiffs' strained interpretation, which relies on inapplicable Policy language and Utah code provisions, is simply not plausible. The phrase "land motor vehicle" is a straightforward term that does not, in the usual sense of the word, include an airplane.[3]

State Farm's interpretation is also consistent with the Utah statute governing UM coverage. Utah law defines and describes UM coverage in the Motor Vehicle Part of the Utah Insurance Code. See Utah Code Ann. §§ 31A-22-301 to 31A-22-322. At the time of the accident, the Motor Vehicle Part defined "motor vehicle" to "mean the same as that term is defined in Section 41-12a-103(4)." Utah Code Ann. § 31A-22-301(1) (2017). Section 41-12a-103(4) is located in Utah's "Financial Responsibility of Motor Vehicle Owners and Operators" Act. It defined "motor vehicle" to mean "every self-propelled vehicle <u>that is designed for use upon a highway</u>, including trailers and semitrailers designed for use with other motor vehicles." (Emphasis added.) It is axiomatic that an airplane is designed primarily to operate in the sky, not on land. Because an airplane is not "designed for use upon a highway," it falls outside the class of self-propelled vehicles considered to be "motor vehicles" in the UM statute.

Plaintiffs unpersuasively assert that because the UM statute "does not expressly exclude airplanes," (Pls.' Opp'n to Mot. to Dismiss at 27), it can be read to include airplanes. The fact that the statute does not use the term "airplane" or "aircraft" suggests the opposite. The words

---

[3] Plaintiffs contend the definition of "motor vehicle"—i.e., "land motor vehicle"—is an exclusion the court must strictly construe against State Farm, the insurer: "State Farm admits that 'land motor vehicle' is not defined in the policies[.] … Tacking 'land' in front of 'motor vehicle' is a provision that limits or excludes coverage." (Pls.' Opp'n to Mot. to Dismiss at 9.) Certainly "provisions that limit or exclude coverage should be strictly construed against the insurer." Am. Nat'l Prop. & Cas. Co. v. Sorensen, 362 P.3d 909, 913 (Utah 2013) (citation omitted). But the fact that "land" modifies "motor vehicle" does not make it an exclusion. The language simply defines "motor vehicle" and does not require a strict construction.

and terms the Utah legislature chose to add, and to omit, in the Motor Vehicle Part of the Utah Insurance Code must be viewed as intentional. See Marion Energy, Inc. v. KFJ Ranch P'ship, 267 P.3d 864, 866 (Utah 2011) ("We … give effect to omissions in statutory language by presuming all omissions to be purposeful."). The fact that the term "airplane" does not appear in the Motor Vehicle Part is actually evidence the legislature did not intend an airplane to qualify as a motor vehicle for any purpose relevant to motor vehicle insurance, including UM coverage.

In comparison, while the Motor Vehicle Part of the Utah Insurance Code governs travel on a roadway, Utah has a separate insurance code section applicable to airplanes. Titled "Aircraft public liability insurance," that code section defines the minimum insurance coverage requirements applicable to "aircraft." Utah Code Ann. § 31A-22-1300. It contains no language linking the Motor Vehicle Part of Utah's Insurance Code, or the UM benefits provided by the Motor Vehicle Part, to accidents involving airplanes.

Nevertheless, Plaintiffs attempt to artificially broaden the statutory definition of "motor vehicle" in order to capture the unique facts of this case. They offer a forced interpretation that relies on inapplicable statutory provisions in Utah's Criminal Code, Sales and Use Tax Act, and Aeronautics Act.

First they rely on the definition of "motor vehicle" found in Section 76-5-207 of the Utah Criminal Code. They contend that

> [t]he term 'Motor Vehicle' in Utah can include an aircraft, and, for example the term is included in part of the Utah Code: 'Motor vehicle' means any self-propelled vehicle and includes any automobile, truck, van, motorcycle, train, engine, watercraft, or aircraft. See Utah Code Ann. § 76-5-207 (West).

(Compl. ¶ 44.)

There is no basis to suggest a provision in Utah's Criminal Code has any influence on a civil insurance matter. The definitions and terms relevant to UM coverage are contained in the

7

Motor Vehicle Insurance Part of the Insurance Code, whereas Section 76-5-207 concerns criminal offenses and automobile homicide. Indeed, the plain language of the criminal provision in § 76-5-207 is self-limiting, for it starts out with the restriction, "As used in this section . . . ." By including such language in the statute, the legislature intended to apply the definition of "motor vehicle" in Section 76-5-207 only to matters of automobile homicide. The fact that an airplane may qualify as a "motor vehicle" for purposes of criminal homicide charges does not establish that an airplane qualifies as a "motor vehicle" for purposes of UM benefits.

Plaintiffs' reliance on language in Utah's Sales and Use Tax Act and the Aeronautics Act fares no better. They point to § 59-12-102, in the Utah Sales and Use Tax Act, which defines a "vehicle" that must be titled and registered for tax purposes to include an "aircraft." But Plaintiffs do not explain how the subject of that section transfers to UM insurance coverage. The same can be said of Utah's Aeronautics Act, § 72-10-117(1)(a), which allows a county to "issue a permit authorizing an aircraft to land on or take off from designated county roads." Plaintiffs offer no reasoned basis to conclude that the Aeronautics Act has any connection to the statute addressing UM insurance coverage. Moreover, the fact that a plane may, under certain circumstances, use a public road (as opposed to an airport runway) to take off or land does not mean an airplane is designed for use upon a highway.

Case law also supports a plain language reading that excludes "airplane" from the definition of "motor vehicle" in a UM insurance policy. Courts that have addressed an insurance claim in the context of a collision between an automobile and an airplane provide persuasive reasoning for that conclusion.

For instance, an appellate court in the State of Washington rejected an interpretation similar to the one Plaintiffs offer. In <u>Sperry v. Maki</u>, 740 P.2d 342 (Wash. Ct. App. 1987), a

small plane collided with a vehicle while making an emergency landing on a public highway. The vehicle owners filed a claim with their insurance company for underinsured motor vehicle benefits, alleging the plane was a motor vehicle for purposes of that coverage. The court analyzed the policy language and statutory definitions of "motor vehicle" and "vehicle," and concluded the terms were not ambiguous and their ordinary meaning did not include an airplane.

> Although this court is required to construe an ambiguous term in an insurance policy in favor of the insured, we are not permitted to modify the unambiguous meaning of language contained in a policy or statute under the guise of construing it. Applying these principles to the terms "motor vehicle" or "vehicle," we conclude an aircraft does not fall within either term as they are commonly and ordinarily used.
> . . . .
>
> "[V]ehicle" is ordinarily understood to mean a machine designed to move solely on the land. As noted over 50 years ago by Justice Holmes in McBoyle v. United States, 283 U.S. 25, 51 S.Ct. 340, 340, 75 L.Ed. 816 (1931), "in every day speech, 'vehicle' calls up the picture of a thing moving on land.' . . . Likewise, an ordinary person who purchases underinsured motorist insurance believes that insurance covers risks arising from a collision with another car, truck, or the like, not with an airplane.

Id. at 343–44.

In DiPaolo v. State Farm Mutual Automobile Insurance Company, a district court in the District of Nevada found that "land motor vehicle" was unambiguous and did not extend to airplanes. See No. 2:10-cv-001108-RLH-RJJ, 2011 WL 13305304 (D. Nev. Sept. 28, 2011). In that case, an underinsured small airplane made an emergency landing on a road and hit the plaintiff's car. State Farm denied the plaintiff's claim because an airplane did not fall within the term "land motor vehicle."

Applying an everyday reading of "land motor vehicle," the DiPaolo court agreed with State Farm. The court first addressed public policy issues and found "the Nevada Supreme Court would determine that Nevada's UM/UIM statutes do not require insurers to cover freak accidents with underinsured aircraft." Id. at *2. The court then reviewed the policy language: "The policy

defines a motor vehicle as a 'land motor vehicle.' The term 'land motor vehicle' is only ambiguous once attorneys get involved, not before." Id. at *3. Giving the term its "plain and ordinary meaning as viewed by one not trained in the law," the court found the meaning was "obvious." Id.

> Normal people (i.e., non-attorneys) do not hear the term "land motor vehicle" and picture taxiing aircraft, but cars, trucks, and likely even bulldozers and snowmobiles. Quite simply, an airplane is an aircraft and the Court need not explain further. As such, by defining the term "motor vehicle" further as a "land motor vehicle," State Farm's policy does not cover accidents with underinsured airplanes.

Id.

The case here is directly analogous to Sperry and DiPaolo. The plain and ordinary meaning of "land motor vehicle" requires a finding that the airplane operated by Mr. Erick does not fall within that definition and that Plaintiffs are not entitled to UM benefits for the accident.[4] Accordingly, Plaintiffs' breach of contract claim fails as a matter of law.

**Breach of the Implied Covenant of Good Faith and Fair Dealing**

Plaintiffs allege State Farm breached the covenant of good faith and fair dealing by "refusing to fully process [Mrs. Sandoval's] uninsured motor vehicle claim and by refusing to pay the uninsured motor vehicle coverage benefits." (Compl. ¶ 49.) Plaintiffs' claim fails as a

---

[4] Plaintiffs, in their attempt to wrangle the Policy language to fit their definition, misapply an exception found in the Policy's definition of "uninsured motor vehicle." The definition of "uninsured motor vehicle" excludes "a land motor vehicle . . . designed for use primarily off public roads except while on public roads." (Policy at 21 (emphasis added).) Plaintiffs argue that an airplane fits within this exception by apparently analogizing an off-road vehicle (such as an ATV) to an airplane. According to Plaintiffs, an airplane is designed primarily for use off public roads, but because Mr. Erick's plane was on a public road when the crash occurred, they have coverage. Their argument does not take into account that the exception provides coverage to an off-road "land motor vehicle." (Id.) As discussed above, an airplane is not a "land motor vehicle." The airplane that struck Mrs. Sandoval's car does not qualify as an uninsured motor vehicle simply because it made contact with a public roadway.

matter of law.

"A claim for breach of the covenant of good faith and fair dealing is derivative of the breach of contract claim." Am. W. Bank Members, L.C. v. State of Utah, 342 P.3d 224, 231 (Utah 2014). Accordingly, when there is no breach of an express contract term, "there can be no cause of action for breach of an implied covenant arising therefrom…." Shiozawa v. Duke, 344 P.3d 1174, 1184 n.6 (Utah Ct. App. 2015) (citing Craner v. Nw. Mut. Life Ins. Co., 12 F. Supp. 2d 1234, 1242 (D. Utah 1998)); see also Vander Veur v. Groove Entm't Techs., 452 P.3d 1173, 1178 (Utah 2019) (implied covenant of good faith cannot "establish new, independent rights or duties to which the parties did not agree"); Brown v. Moore, 973 P.2d 950, 954 (Utah 1998) (Utah courts "will not interpret the implied covenant of good faith and fair dealing to make a better contract for the parties than they made for themselves. Nor will [courts] construe the covenant to establish new, independent rights or duties not agreed upon by the parties.") (quotation marks and citation omitted).

The court has already held that there has been no breach of the express contract. With no breach, there is no bad faith. Accordingly, Plaintiffs do not have a claim for breach of the implied covenant of good faith and fair dealing.[5]

---

[5] At a minimum, State Farm argues, Plaintiffs' claim was fairly debatable, which provides another basis for finding Plaintiffs' Complaint fails to state a claim for breach of the implied covenant. The court agrees. No breach of the duty of good faith occurs when an insurer refuses to pay a claim if there is a legitimate dispute as to coverage. Am. Ins. Co. v. Freeport, 703 F. Supp. 1475 (D. Utah 1987); Prince v. Bear River Mut. Ins. Co., 56 P.3d 524, 533–34 (Utah 2002) ("Under Utah law, if an insurer denies an 'insured's claim [that] is fairly debatable, [then] the insurer is entitled to debate it and cannot be held to have breached the implied covenant if it chooses to do so."). The Policy's plain language states UM coverage is limited to bodily injury and property damage an insured is "legally entitled to recover from the owner or driver of an uninsured motor vehicle." (Policy at 13, 21.) The Policy defined "uninsured motor vehicle" as a "land motor vehicle" without insurance. (Id.) Given that the accident involved an uninsured airplane, State Farm offered a fair reading of the Policy. Accordingly, State Farm did not act in bad faith.

**Declaratory Judgment**

Plaintiffs' declaratory judgment claim is premised on State Farm's alleged breach of contract and breach of the implied covenant of good faith and fair dealing. Because both of those claims fail as a matter of law, the declaratory judgment claim necessarily fails.

**Attorney's Fees**

State Farm requests an award of attorney's fees under Utah Code Ann. § 78B-5-825(1), which states that, in civil actions, a state court "shall award reasonable attorney fees to a prevailing party if the court determines that the action … was without merit and not brought or asserted in good faith." This court's jurisdiction is based on diversity. Given the Erie doctrine,[6] the court may not award fees under § 78B-5-825(1) because it a procedural state statute that conflicts with federal law. "Utah's bad-faith statute [§ 78B-5-825] … is the quintessential procedural attorneys' fees statute" that conflicts with federal policy, specifically the American Rule, under which parties bear their own fees and costs. Banner Bank v. Smith, 30 F.4th 1232, 1239–40 (10th Cir. 2022). Accordingly, "district courts sitting in diversity cannot award fees under it." Id. at 1241. Because State Farm has not identified any other basis for an award of fees in this court (for instance, a fee-shifting provision in a contract, a federal procedural rule, or a federal statute), the court declines to grant its request for fees.

## ORDER

For the foregoing reasons, the court grants Defendant State Farm Mutual Automobile Insurance Company's Motion to Dismiss Plaintiffs' Complaint (ECF No. 20). Specifically,

---

[6] Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938).

Plaintiffs' claims are dismissed with prejudice, and the parties will bear their own fees and costs.

DATED this 23rd day of June, 2022.

                                        BY THE COURT:

                                        *Tena Campbell*

                                        TENA CAMPBELL
                                        U.S. District Court Judge